CHEVRON U.S.A. INC., a California corporation; Marathon Oil Company, an Ohio corporation; and Phillips Petroleum Company, a Delaware corporation, Appellants,

v.

Robert E. LeRESCHE, Commissioner, Alaska Department of Natural Resources; Geoffrey Haynes, Deputy Commissioner, Alaska Department of Natural Resources; Glen Harrison, Director, Division of Minerals and Energy Management, Alaska Department of Natural Resources; Wilson L. Condon, Attorney General of the State of Alaska; Arthur H. Peterson, Regulations Attorney in the Department of Law; James L. Baldwin, Assistant Regulations Attorney in the Department of Law; and State of Alaska, Appellees.

John KATZ, Commissioner, Alaska Department of Natural Resources; Geoffrey Haynes, Deputy Commissioner, Alaska Department of Natural Resources; Glenn Harrison, Director, Division of Minerals and Energy Management, Alaska Department of Natural Resources; Wilson L. Condon, Attorney General of the State of Alaska; and the State of Alaska, Appellants,

v.

EXXON CORPORATION, Appellee.

Nos. 6396, 6648.

Supreme Court of Alaska.

April 29, 1983.

tory interpretation is judicial rather than ad- ministrative.

Stephen M. Ellis, Marc D. Bond, Delaney, Wiles, Hayes, Reitman & Brubaker, Inc., Anchorage, for appellants in No. 6396.

Michael Arruda, Asst. Atty. Gen., Anchorage, Robert M. Maynard, Asst. Atty. Gen., Wilson L. Condon, Atty. Gen., Juneau, for appellants in Nos. 6396 and 6648.

Carl J.D. Bauman, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Melinda Furche Harmon and Kevin Todd Haroff, Houston, Tex., of counsel, for appellee in No. 6648.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This opinion addresses together the issues raised in two appeals: *Chevron U.S.A., Inc. v. LeResche,* no. 6396, and *Katz v. Exxon Corp.,* no. 6648. Each appeal involves a challenge to the validity of certain regulations promulgated by the Department of Natural Resources. The challenged regulations require persons desiring to explore for oil or gas on state lands to obtain a miscellaneous land use permit from the Department. In exchange for the permit, explorers must agree to submit certain data and information flowing from the exploration to the Department. Two superior court judges reached opposite conclusions regarding the validity of these regulations. Although the cases were not consolidated on appeal, the parties stipulated to a tandem briefing scheme. We affirm no. 6396, and reverse and remand no. 6648.

In 1979, the Department of Natural Resources (Department) noticed its intent to adopt a new chapter in the Alaska Administrative Code, 11 AAC 65. This new chapter was to deal with land use permits for use of state lands. On July 11, 1980, then Commissioner of Natural Resources Robert LeResche proposed amendments to this new chapter that would require submission of certain data gathered through oil and gas exploration as a condition to receipt of the permit that would allow such exploration.

On August 18, 1980, the Department held a hearing on the proposed amendments. Representatives of the oil and gas industry opposed the proposed regulations, claiming that they were not authorized by statute, the data to be submitted was unnecessary in leasing oil and gas tracts, and the confidentiality of the data might be breached.

Proposed chapter 11 AAC 65 was never adopted, but the regulations first presented as amendments to that chapter were eventually promulgated as part of 11 AAC 96. Pursuant to these regulations, anyone conducting geophysical exploration activities on any state lands must first obtain a miscellaneous land use permit from the Director of the Division of Minerals and Energy Management of the Department of Natural Resources. 11 AAC 96.010(1)(e). Within ninety days after completion of permitted exploration activities, the permittee

must notify the director of the acquisition of all geophysical data obtained under the permit. 11 AAC 96.210(1). Within thirty days after completion of initial computer processing of the data, and after each subsequent processing, the permittee must make all processed information available to the director. *Id.* The director may inspect and require submission of geophysical exploration data and information up to five years after notification of completion of the initial processing. *Id.* The Department will reimburse the permittee "for all reasonable costs directly incurred . . . because

of the submission of geophysical exploration data and . . . information," including "the costs of magnetic-tape copying, reproduction, and shipping related to the submission" of such data and information. 11 AAC 96.230(a). If requested to do so, the Department will keep confidential all information submitted pursuant to the above provisions. There is no time limit on the period of confidentiality. 11 AAC 96.220.

These regulations, specifically 11 AAC 96.210—.240,[1] are the subject of these appeals.

1. The challenged regulations provide:

11 AAC 96.210. SUBMISSION OF GEOPHYSICAL EXPLORATION DATA AND INFORMATION AND STRATIGRAPHIC TEST DATA. In order to assist the department in managing the leasing, exploration and development of oil and gas resources underlying state lands and to achieve the purposes of AS 38.05.180(a), the director will, under the circumstances described in this section, require submission of geophysical exploration data, geophysical exploration information, and stratigraphic test data, as a condition of the issuance of a land use permit to conduct geophysical exploration field operations or to drill a stratigraphic test well.

(1) Within 90 calendar days after termination of any geophysical exploration, the permittee shall notify the director, in writing, of the acquisition of all geophysical exploration data obtained under the permit. Within 30 days after completion of the initial processing and each subsequent processing of the geophysical exploration data, the permittee shall notify the director, in writing, of the availability of this processed geophysical exploration information. The director reserves the right to inspect and require submission of geophysical exploration information obtained under the permit for five years after notification by the permittee that initial processing has been completed. The permittee shall submit an original or a copy of all geophysical exploration information that may be required by the director. The permittee will not be required to submit additional special-purpose processing that is different from the processing sequence used by the permittee.

(2) Unless the director grants an extension upon the permittee's written request, the permittee shall submit an original or a copy of all test data acquired from a stratigraphic test well not later than 30 days after the well is plugged or abandoned.

11 AAC 96.220. CONFIDENTIAL STATUS OF INFORMATION. All geophysical exploration data, geophysical exploration information, and stratigraphic test data filed

under this chapter will be kept confidential upon the request of the person supplying the information. This confidentiality requirement is subject to the following provisions.

(1) The director may disclose confidential geophysical exploration data, geophysical exploration information, or stratigraphic test data under this chapter to a third party only if the disclosure is for the storage, processing, reprocessing, and interpretation for the state. However, before the disclosure, the third party must agree in writing that it will not disclose the data or associated information derived or generated from the data to any other party and that it will not acquire any interest in the land evaluated by the data. The third party shall execute and post a bond in an amount to be determined by the director. The bond shall be to the benefit of the state and the permittee.

(2) If the director obtains the consent of the permittee in writing, the director may disclose confidential geophysical exploration data, geophysical exploration information, or stratigraphic test data filed under this chapter to the conservation division of the United States Geological Survey, United States Department of Interior, without reference to the purpose for which the disclosure is made. However, before the disclosure, a responsible officer of the United States Department of Interior must agree in writing to keep the data and any associated information derived or generated from it confidential. Copies of the data filed under this chapter may not be given to the conservation division; however, the conservation division may participate in the interpretation of the data on the premises of the division.

11 AAC 96.230. REIMBURSEMENT FOR GEOPHYSICAL EXPLORATION DATA AND INFORMATION. (a) The state will reimburse the permittee for all reasonable costs directly incurred by the permittee because of the submission of geophysical exploration data and geophysical exploration information to the division under 11 AAC 210(1). Reimbursable expenditures are the costs of mag-

On June 16, 1981, Chevron U.S.A., Inc. and Marathon Oil Company filed a complaint pursuant to AS 44.62.300,[2] seeking invalidation of 11 AAC 96.210—.240 and a permanent injunction against their enforcement. An amended complaint later added Phillips Petroleum Company as a plaintiff.[3] On July 27, 1981, Chevron moved for summary judgment. The motion was argued before the Honorable Mark Rowland on September 11, 1981. Judge Rowland upheld the challenged regulations on September 16, 1981. He found that the Commissioner of Natural Resources had the authority to adopt the regulations and did not exceed it in doing so, that they were consistent with the authorizing statutes, and that they were reasonably necessary and not arbitrary or unreasonable. Chevron appealed on October 13, 1981.

Exxon Corporation (Exxon) filed a complaint on August 31, 1981, while Chevron's action was still pending. Exxon also sought a declaration of the invalidity of 11 AAC 96.210–.240 and a permanent injunc-

tion against the enforcement of the regulations. The Department moved for summary judgment on October 21, 1981, and Exxon filed a cross-motion for summary judgment on November 9, 1981. The Honorable Daniel A. Moore heard the motions on January 8, 1982. Judge Moore granted Exxon's cross-motion and permanently enjoined enforcement of the regulations. He found that the regulations exceeded the scope of the Department's regulatory authority; were inconsistent with AS 38.05.180, which the Department cited as statutory authority for the regulations; and that the Department had not followed the notice provisions of the Alaska Administrative Procedure Act, AS 44.62, in adopting the regulations.[4] The Department appealed on February 9, 1982.

## I

In assessing the validity of an administrative regulation, we follow the procedure set out in *Kelly v. Zamarello,* 486 P.2d 906 (Alaska 1971).[5] Therefore, we

---

netic-type copying, reproduction, and shipping related to the submission of geophysical exploration data and geophysical exploration information to the division.

(b) The state will not reimburse the permittee for any indirect costs or effects of the permittee for the time, personnel, or equipment used to prepare the geophysical exploration data or geophysical exploration information for submission to the division.

(c) The division will initiate reimbursement to the permittee for costs described in (a) of this section within 30 days after receipt of a legible copy of the geophysical exploration data or geophysical exploration information.

11 AAC 96.240. LIABILITY. (a) If, after submission of the geophysical exploration data, geophysical exploration information, or stratigraphic test data, the permittee determines that errors exist in the data or information submitted, the permittee shall inform the division of the errors and, as soon as practicable, shall submit any corrected data or information.

(b) The permittee is not responsible for any actions the division may take in the interpretation or use of the geophysical exploration data or geophysical exploration information submitted.

2. AS 44.62.300 provides that an "interested person may get a judicial declaration on the validity of a regulation by bringing an action for declaratory relief in the superior court."

3. For convenience, all three oil companies involved in no. 6396 will hereinafter be referred to as "Chevron."

4. Because he found the regulations invalid on these grounds, Judge Moore declined to "reach the issues concerning whether the regulations are unconstitutional, arbitrary, unreasonable, unnecessary or impermissibly retroactive in effect," other challenges that Exxon had made to the validity of the regulations.

5. [W]here an administrative regulation has been adopted in accordance with the procedures set forth in the Administrative Procedure Act, and it appears that the legislature has intended to commit to the agency discretion as to the particular matter that forms the subject of the regulation, we will review the regulation in the following manner: First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency. This aspect of review insures that the agency has not exceeded the power delegated by the legislature. Second, we will determine whether the regulation is reasonable and not arbitrary. This latter inquiry is proper in the review of any legislative enactment.

*Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971). Although *Kelly* requires that the regula-

must determine whether the legislature delegated rule-making authority to the Department, whether the Department followed the Administrative Procedure Act in promulgating the regulation, and whether the regulation is consistent with and reasonably necessary to implement the statutes authorizing its adoption.[6] *Id.* at 911.

tions be reasonable and not arbitrary, Chevron and Exxon do not make a challenge of this nature on this appeal.

6. AS 44.62.030 provides:

> *Consistency between regulation and statute.* If, by express or implied terms of a statute, a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purpose of the statute.

7. The interpretation of these statutes is a process that is uniquely within the province of this court. *See Wien Air Alaska, Inc. v. Department of Revenue,* 647 P.2d 1087, 1090 (Alaska 1982); *Alaska Pub. Util. Comm'n v. Municipality of Anchorage,* 555 P.2d 262, 266 (Alaska 1976).

8. AS 38.05.020(b)(1) provides in pertinent part:

> (b) The commissioner may
> (1) establish reasonable procedures and adopt reasonable rules and regulations necessary to carry out this chapter and may, whenever necessary, issue directives or orders to the director to carry out specific functions and duties; all rules and regulations adopted by the commissioner shall be adopted under the Administrative Procedure Act (AS 44.62).

9. The pertinent sections of AS 38.05.180 provide:

> (a) The legislature finds that
> (1) the people of Alaska have an interest in the development of the state's oil and gas resources to
> (A) maximize the economic and physical recovery of the resources;
> (B) maximize competition among parties seeking to explore and develop the resources;
> (C) maximize use of Alaska's human resources in the development of the resources;
> (2) it is in the best interests of the state to encourage an assessment of its oil and gas resources and to allow the maximum flexibility in the methods of issuing leases to
> (A) recognize the many varied geographical regions of the State and the different costs of exploring for oil and gas in these regions;

■ The Department listed four statutes as authorizing these regulations: AS 38.05.-020, .035, .180, and .330. Chevron and Exxon allege that none of these statutes provides authority for the regulations.[7] Because we conclude that AS 38.05.020(b)(1),[8] read in conjunction with AS 38.05.180,[9] authorizes these regulations, we need not ad-

> (B) minimize the adverse impact of exploration, development, production, and transportation activity.
> (b) The commissioner shall annually prepare and submit to the legislature, between the first and fifteenth day of each regular legislative session, a five-year proposed oil and gas leasing program consisting of a schedule of proposed lease sales and specifying as precisely as practicable the location of tracts proposed to be offered for oil and gas leasing during the calendar year in which the proposed program is submitted to the legislature and the following four calendar years.
> (c) Except as provided in (d) and (w) of this section, an oil and gas lease sale may not be held unless it was included in the proposed leasing programs submitted to the legislature during the two calendar years preceding the year in which the sale is held. A lease sale shall be held during the calendar quarter for which it is scheduled in the proposed oil and gas leasing program but may be delayed by the commissioner for not more than 90 days after the last day of the calendar quarter for which it was scheduled if the commissioner determines that a delay is in the best interest of the state. A lease sale which is not held during the calendar quarter for which it was scheduled in the oil and gas leasing program, or in the following 90-day period authorized by this subsection, may be held only if rescheduled as provided in (b) of this section. A lease sale may not be held before the date it is scheduled in the proposed oil and gas leasing program.
> . . . .
> (e) Simultaneously with submission of the leasing program required under (b) of this section, the commissioner shall submit to the legislature a report containing the following:
> (1) the schedule of all lease sales held during the preceding calendar year, the bidding method or methods utilized, and an analysis of the results of the bidding;
> (2) if determined, a description of the bidding methods to be used for all lease sales to be held during the current and next two succeeding calendar years;
> (3) the reasons a particular bidding method has been selected.
> (f) The commissioner may issue oil and gas leases on state land to the highest responsible qualified bidder determined by competitive bidding under regulations adopted by the

dress the parties' contentions regarding AS 38.05.035 and .330.

Chevron and Exxon contend that neither AS 38.05.020(b)(1) nor AS 38.05.180 provides authority for the challenged regulations. They allege that AS 38.05.020(b)(1) is merely a general grant of authority to administer the Alaska Land Act, AS 38.05, and that the section provides no direct authority relevant to these regulations. They also assert that since the only provisions of AS 38.05.180 that mention collection of geophysical data [10] do not authorize collection of such data via regulations such as these, section 180 also contains no direct authority for their adoption.

However, considered together, these two statutes imply authority to adopt the challenged regulations. AS 38.05.020(b)(1) allows the Commissioner to "establish reason-

able procedures and adopt reasonable rules and regulations necessary to carry out" the Alaska Land Act. AS 38.05.180(a), (b), (c), (e), and (f) impose upon the Commissioner the responsibility to maximize State return from State owned oil and gas resources through careful planning, including pre-sale analysis of tracts proposed for lease. Such planning and pre-sale analyses require the Commissioner to have access to the most reliable geological and geophysical data available. These regulations are therefore reasonably necessary to insure that the planning process is carried out responsibly. The authority to adopt them may be clearly implied from AS 38.05.020(b)(1) and .180(a), (b), (c), (e), and (f).[11]

## II

We must now determine whether the Department followed the procedures

commissioner. Bidding may be by sealed bid or according to any other bidding procedure the commissioner determines is in the best interests of the state. Whenever, under any of the leasing methods listed in this subsection, a royalty share is reserved to the state, it shall be delivered in pipeline quality and free of all lease or unit expenses, including but not limited to separation, cleaning dehydration, gathering, salt water disposal, and preparation for transportation off the lease or unit area. Following a pre-sale analysis, the commissioner may choose at least one of the following lease methods: . . . (there follows a description of seven possible leasing methods).

10. AS 38.05.180(i) provides in pertinent part: The commissioner may . . . provide for credits to be earned by persons performing geophysical work on state land, if that work is performed during the two seasons immediately preceding an announced lease sale and on land included within the sale area and the geophysical information is made public following the sale.
AS 38.05.180(x) provides:
A lessee conducting or permitting any exploration for, or development or production of, oil or gas on state land shall provide the commissioner access to all noninterpretive data obtained from that lease and shall provide copies of that data, as the commissioner may request. The confidentiality provisions of AS 38.05.035 apply to the information obtained under this subsection.
Chevron and Exxon note that neither section provides direct authority to require submission of data from unleased state lands.

11. Chevron and Exxon seem to argue without explicitly so stating that these regulations are invalid unless a statute expressly delegates authority for their adoption. However, the question of implied administrative regulatory authority was settled long ago in the case of *Boehl v. Sabre Jet Room, Inc.,* 349 P.2d 585 (Alaska 1960). In that case, the Alcoholic Beverage Control Board was given broad power to " 'effectuate and carry out the purpose' of the act" that created it. *Id.* at 587. We held that the board needed no more specific grant of power in order to adopt closing hours regulations. *Id.* Exxon seeks to distinguish *Boehl,* noting the emphasis that the opinion placed upon the fact that the case involved regulation of alcoholic beverages. In *Boehl,* the court noted:

The legislature was dealing with a business which, unlike other commercial enterprises, possesses the capacity for grave and harmful effects upon the public welfare.

. . . .

It is because of this close relation to public welfare that fewer specific standards or criteria for the guidance of administrative officials are required.

*Id.* at 589. However, we find the asserted distinction unpersuasive. Even if we assume that the opinion in *Boehl* turned upon the closeness of the regulations to the public welfare, we may take judicial notice of the importance of oil and gas resources and revenues to the State of Alaska. *See* Alaska R.Evid. 201(b) and (c).

dictated by the Administrative Procedure Act in promulgating the challenged regulations. We hold that the regulations are procedurally valid.

The regulations were originally considered as amendments to proposed 11 AAC 65. The Department later dropped this proposed chapter, but subsequently adopted the regulations as part of 11 AAC 96. The regulations that were eventually adopted differed from the proposed regulations in that they require submission not only of initially processed information from geophysical exploration data, but also of information that is subsequently processed.

■ Exxon successfully contended below that this variation was so substantial as to invalidate the regulations. However, we agree with the Department that the lower court erred in this determination. AS 44.-62.100(a)(3) [12] establishes a rebuttable presumption that a properly filed regulation is procedurally valid. A regulation may be declared invalid "for a substantial failure to comply" with the Administrative Procedure Act. AS 44.62.300. Thus a challenger of a regulation's validity must show such a substantial failure in order to rebut the presumption of procedural validity. *See State v. First National Bank of Anchorage,* 660 P.2d 406 at 425, Op. No. 2591 at 51 (Alaska 1982). We find no such substantial failure here.

The notice requirements of the Administrative Procedure Act require that the notice of proposed regulations contain "an informative summary of the proposed subject of agency action; ..." AS 44.62.200(a)(3). In addition, AS 44.62.200(b) allows the final regulation to vary from the "informative summary" required by section 200(a)(3) if the subject matter remains the same and the original notice assured reasonable notification to the public that the proposed agency action might affect its interests.

The legislative history of AS 44.62.200 demonstrates that the legislature intended the concepts of reasonable notice and subject matter to be read broadly. The Report of the House Judiciary Committee on HB 786 (later to become AS 44.62.200) stated in part:

> As a result of certain rulings of the superior court in the Third Judicial District, and, apparently, certain opinions and advice from the Department of Law, under the present language of the statute, the board feels that its notice of proposed regulations must be very detailed and specific and that a regulation it adopts may not vary at all from the notice given for that regulation, ...

> The Judiciary Committee believes that such a restrictive approach is not desirable, and since this administrative difficulty has arisen there should be some clarification of the law.

1970 House Journal 917–18. *See also State v. First National Bank of Anchorage,* at 425, where we noted that "it is clear that the legislature intended that the 'informative summary' requirement [of AS 44.62.-200(a)(3)] be liberally construed." *Id.* at 425 n. 32.

Reading these terms broadly, it appears that the subject matter of the challenged regulations was mandatory submission of data gathered on state lands pursuant to a miscellaneous land use permit. The original notice clearly contemplated submission of such data.[13] Although the final regula-

---

12. AS 44.62.100(a)(3) provides:

(a) The filing of a certified copy of a regulation or an order of repeal by the lieutenant governor raises the rebuttable presumptions that ...

(3) all requirements of this chapter and the regulations relative to the regulation have been complied with; ...

13. The pertinent provisions of the notice indicated that the proposed regulations would:

(3) Require, within 90 days after termination of field operations, the filing of a copy of all geophysical exploration data acquired under the permit or a consolidated version of that data; within 30 days after completion of initial processing of the geophysical exploration data, the filing of a copy of the processed information; and, within 30 days after completion of a stratigraphic test well, the filing by the permittee of a copy of all test data from the well (11 AAC 65.520);

tions require submission of more data than was originally contemplated, the subject matter remains the same: submission of test data. Since the original notice contemplated such submission, it provided reasonable notice that the proposed regulations might affect the petroleum industry's interests in the area of submission of test data.[14] Therefore, we find these regulations procedurally valid.

## III

■ We finally must determine whether the challenged regulations are consistent with the statutes that authorize their adoption.[15] Chevron and Exxon contend that standard statutory construction principles and the legislative history of AS 38.05.-180(x) show that the section was intended to limit the Department's authority to require the submission of geophysical test data. Therefore, they argue that the regulations are inconsistent with AS 38.05.180, one of the statutes that authorized their adoption, and thus must be declared invalid

> (4) Provide for the confidentiality of geophysical data and information and stratigraphic test data filed with the Division except in certain limited circumstances (11 AAC 65.530).

The notice also provided a location at which copies of the proposed regulations could be obtained. *Cf. Kingery v. Chapple,* 504 P.2d 831, 834 (Alaska 1972), where we noted a similar notification of availability in finding that a notice adequately provided the required "informative summary."

**14.** In *State v. First National Bank of Anchorage,* 660 P.2d 406, we considered the following notice sufficient to allow "members of the public ... to decide whether their interests could be affected by the agency action...."

> NOTICE IS HEREBY GIVEN that the Department of Commerce ... proposes to adopt regulations in Title 3 of the Administrative Code to implement AS 34.55 Uniform Land Sales Practices Act as follows:
> Article 1. General Provisions
> Article 2. Filing Procedures
> Article 3. Unfair Acts and Practices
> Article 4. Advertising and Promotion Plans
> Article 5. Protection of Purchasers
> Article 6. Severability

*Id.* at 425. We likewise consider the detail provided in the notice regarding the regulations

pursuant to AS 44.62.030. *See* note 6 *supra.* However, we find no such inconsistency.

AS 38.15.180(x) provides:

> A lessee conducting or permitting any exploration for, or development or production of, oil or gas on state land shall provide the commissioner access to all noninterpretive data obtained from that lease and shall provide copies of that data, as the commissioner may request. The confidentiality provisions of AS 38.-05.035 apply to the information obtained under this subsection.

The various construction principles cited by Chevron and Exxon are of little avail in demonstrating inconsistency of the regulations with the statute. A literal reading of section 180(x) reveals merely that it authorizes the Commissioner to require submission of non-interpretive data obtained by a lessee from state land under lease.[16] Thus no inconsistency is demonstrated.

The maxim *expressio unius est exclusio alterius,* meaning the expression of one thing implies the exclusion of others, has had limited application to date in Alaska.[17]

here in dispute to be sufficient. *See* note 13 *supra.*

**15.** *Kelly v. Zamarello,* 486 P.2d at 911. *Kelly* requires that the regulations be "consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency." *Id.* Since we have already determined that these regulations are reasonably necessary to implement the Alaska Land Act, we do not address this question again. *See* Part I *supra.*

**16.** Although we have rejected the plain meaning rule as a strict exclusionary rule of statutory construction, *North Slope Borough v. Sohio Petroleum Corp.,* 585 P.2d 534, 540 n. 7 (Alaska 1978), we will accord weight to the plain language of the statute in ascertaining its meaning. *State v. Alex,* 646 P.2d 203, 208–09 n. 4 (Alaska 1982); *State Dep't of Natural Resources v. City of Haines,* 627 P.2d 1047, 1049 & n. 6 (Alaska 1981).

**17.** We have to date used the maxim only in criminal cases. In two of them, we utilized the maxim to assess the penalties available in punishing an offender. *Sprague v. State,* 590 P.2d 410, 415 (Alaska 1979) (construing a probation statute); *Puller v. Municipality of Anchorage,* 574 P.2d 1285, 1287 (Alaska 1978) (maxim used

Chevron and Exxon contend that this maxim compels the conclusion that section 180(x) forbids the Commissioner to require submission of data from *unleased* state lands since it grants such power with regard to *leased* state lands. However, Sutherland states that the maxim should be cautiously applied. 2A C. Sands, Sutherland Statutory Construction § 47.25 (4th ed. 1973). "[W]here an expanded interpretation will accomplish beneficial results, serve the purpose for which the statute was enacted, [or] is a necessary incidental to a power or right, ... the maxim will be disregarded and an expanded meaning given." *Id.* (footnotes omitted). In the present case, the statute was enacted to provide for orderly oil and gas leasing that maximizes state return on its oil and gas resources. AS 38.05.180(a). To "serve the purpose for which [AS 38.05.180] was enacted," the Commissioner needs test data from lands not yet under lease. We therefore decline to apply the maxim in this case.

Exxon asserts that since the legislature should not be presumed to use superfluous language in a statute, the words "from that lease" in section 180(x) must be read to indicate legislative intent to limit the Commissioner's authority over unleased state lands. However, we believe that much more clear legislative intent is required to find a limitation of the Commissioner's authority over unleased state lands. As the Department notes, the words "from that lease" could just as well have been added to make clear the scope of section 180(x) without simultaneously connoting a limitation on the Commissioner's regulatory authority.

Chevron argues that specific statutory provisions control over general ones; therefore, even if other statutes generally grant the Commissioner authority to enact these regulations, the more specific section 180(x) rescinds the authority. However, this rule of construction has limited application and should not be applied where the specific and general provisions may be harmonized. *State, Department of Highways v. Green,* 586 P.2d 595, 602 (Alaska 1978). On its face, section 180(x) simply grants authority to the Commissioner to gain access to geophysical data gathered on leased lands. This does not indicate that the Commissioner cannot still adopt regulations that are reasonably necessary to carry out his duties under the Alaska Land Act. Since AS 38.-05.020(b)(1) and .180(x) can be harmonized, we decline to apply this principle as well.

The legislative history likewise is of little help in demonstrating that the regulations are inconsistent with section 180(x). If the statutory language is plain, the party seeking to alter its facial meaning bears a heavy burden in showing contrary legislative history. *State, Department of Natural Resources v. City of Haines,* 627 P.2d 1047, 1049 (Alaska 1981). Further, merely because we do not blind ourselves to legislative history in any case does not mean that legislative history will always be helpful in determining what a statute means. In *North Slope Borough v. Sohio Petroleum Corp.,* 585 P.2d 534 (Alaska 1978), we noted that "[t]he difficulty in drawing reliable conclusions from legislative history has often been noted as one reason why legislative history should be used with caution." *Id.* at 543 n. 12.

We do not explore the parties' contentions regarding the legislative history preceding the adoption of current section 180(x) in detail because we find it to be unhelpful. That all parties often cite to the same history and glean from it differing meanings demonstrates the history's equivocal nature. We do not find in any of the prior legislative history any clear indication that the legislature intended to rescind the Commissioner's authority to enact the chal-

in determining available sanctions for refusal to submit to breathalyzer test). The remaining case, *Surina v. Buckalew,* 629 P.2d 969, 977–78 (Alaska 1981), dealt with the authority of prosecutors to grant immunity to a person to compel testimony in a criminal trial. Although many courts found no inherent prosecutorial authority to do so, we noted that often such holdings were in the context of statutes granting limited authority in the immunity area. We noted that courts finding no discretionary authority in areas not enumerated in statute were in essence applying the maxim *expressio unius est exclusio alterius.*

lenged regulations. Because the language of section 180(x) is plain, Chevron and Exxon bore a heavy burden in showing such intent, a burden that they have not met. *State, Department of Natural Resources v. City of Haines,* 627 P.2d at 1049.

The parties also point to legislative activity that occurred after the passage of section 180(x) to support their respective positions. The Department argues that subsequent legislative appropriations to implement the regulations in question indicates that the legislature approved of them. *Alaska Public Employees Association v. State,* 525 P.2d 12 (Alaska 1974) is dispositive of this contention. We held there that subsequent appropriations are irrelevant in determining legislative intent unless there is evidence that the legislature focused on a particular item in enacting the appropriations legislation. *Id.* at 17–18. Chevron argues that the Twelfth Alaska Legislature's refusal to adopt amendments to section 180(x) that would have explicitly granted the Commissioner authority to require submission of data from unleased lands indicates legislative rejection of such authority. However, courts are hesitant to accord much weight to legislative inaction, especially when the inaction in question is that of a subsequent legislature. *See American Trucking Associations v. Atchison, Topeka, and Santa Fe Railway,* 387 U.S. 397, 417–18, 87 S.Ct. 1608, 1619, 18 L.Ed.2d 847, 860–61, *reh'g denied* 389 U.S. 889, 88 S.Ct. 11, 19 L.Ed.2d 197 (1967); *United States v. Price,* 361 U.S. 304, 310–12, 80 S.Ct. 326, 330–31, 4 L.Ed.2d 334, 339–40 (1960); *Quinn v. State,* 15 Cal.3d 162, 124 Cal.Rptr. 1, 539 P.2d 761, 769 (Cal.1975); *Banif Corp. v. Black,* 12 Or.App. 385, 507 P.2d 49, 53 (Or.App.1973). We decline to do so here.

The regulations therefore survive the various challenges made to their validity. The judgment in no. 6396 is accordingly affirmed. The judgment in no. 6648 is reversed, but because certain issues were not reached below,[18] the case is remanded for further proceedings not inconsistent with this opinion.

18. *See* note 4 *supra.*

AFFIRMED in no. 6396; REVERSED and REMANDED in no. 6648.

CONNOR, J., not participating.