STATE of Alaska, William A. Ross, Commissioner of the Department of Environmental Conservation, Appellant,

v.

Jerry A. ANDERSON, Appellee.

No. S-1824.

Supreme Court of Alaska.

Feb. 5, 1988.

Rehearing Denied March 24, 1988.

Michele D. Brown, Asst. Atty. Gen., Anchorage, Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

A. Robert Hahn, Jr., Hahn, Jewell & Stanfill, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

BURKE, Justice.

The single question in this appeal is whether the Department of Environmental Conservation (DEC) can validly require its

approval of potential subdivision plans as a prerequisite to the recording and sale of any lots in the subdivision. Jerry Anderson, an Alaskan land surveyor and real estate broker, filed a complaint against the DEC seeking a permanent injunction against the enforcement of 18 AAC 72.-065(e) and (f) (eff. 2/3/77; am. 3/30/85). On cross-motions for summary judgment, the superior court found that those regulatory provisions conflict with state statutes which give boroughs the authority to approve subdivision plats prior to recording, and that the adoption of those regulations was beyond the DEC's statutory authority. Judge Charles Cranston issued a final judgment invalidating subsections (e) and (f) and permanently enjoining the DEC from enforcing them. The DEC appeals. We hold that the entire regulation is valid, and thus reverse.

### THE REGULATORY SCHEME

Since 1973, the DEC has had in place regulations requiring a person proposing a subdivision to submit plans to the department for a review of wastewater disposal capabilities. Currently, 18 AAC 72.065 requires a subdivision developer's plans to show proposed sewers, wastewater treatment works and disposal systems, drinking water sources, lot and street layout, the amount of sewage that would typically be generated, the location of storm sewers, and other detailed information relevant to effective wastewater disposal. 18 AAC 72.065(a). The regulation also provides that the DEC "will issue a decision," and "will, in its discretion, attach terms and conditions to subdivision plans needed to ensure compliance with this chapter." 18 AAC 72.065(b), (c). Further, the "subdivider shall include the terms and conditions of the [DEC's] subdivision plan approval ... on the subdivision's plat and instruments." 18 AAC 72.065(d). There is no question here as to the DEC's authority to enact or enforce the foregoing provisions.

This case concerns only the validity of 18 AAC 72.065(e) and (f). Those subsections provide:

(e) The department will place its approval of the plans on the subdivision's final plat before recording. Department approval must appear on the plat of record and recorded instruments.

(f) A person creating a subdivision may sell, contract to sell, lease, or otherwise convey an interest in any lot within that subdivision only with plan approval for that subdivision under this section.

18 AAC 72.065(e), (f).

### DISCUSSION

In assessing the validity of an administrative regulation, we follow the procedure set out in *Kelly v. Zamarello*, 486 P.2d 906 (Alaska 1971):

[W]here an administrative regulation has been adopted in accordance with the procedures set forth in the Administrative Procedure Act, and it appears that the legislature has intended to commit to the agency discretion as to the particular matter that forms the subject of the regulation, we will review the regulation in the following manner: First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rule-making authority on the agency. This aspect of review insures that the agency has not exceeded the power delegated by the legislature. Second, we will determine whether the regulation is reasonable and not arbitrary. This latter inquiry is proper in the review of any legislative enactment.

*Id.* at 911. *Accord Chevron U.S.A. v. Le-Resche*, 663 P.2d 923, 926 (Alaska 1983); *Kenai Peninsula Fisherman's Cooperative v. State*, 628 P.2d 897, 906 (Alaska 1981). To be effective, a regulation adopted by a state agency must be "within the scope of authority conferred and in accordance with standards prescribed by other provisions of law." AS 44.62.020. Further,

If, by express or implied terms of a statute, a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective un-

less consistent with the statute and reasonably necessary to carry out the purpose of the statute.

AS 44.62.030.

Therefore, in determining the validity of 18 AAC 72.065(e) and (f), we will ascertain (1) whether the regulation is within the scope of authority conferred on the DEC; *i.e.,* whether it is consistent with and reasonably necessary to carry out the purposes of the enabling statutes, (2) whether it is reasonable, and (3) whether it directly conflicts with any other state statute.

Finally, in considering these elements, we begin with the presumption that the administrative regulations are valid, *State v. Alyeska Pipeline Service Co.,* 723 P.2d 76, 78 (Alaska 1986); *Union Oil of California v. State, Department of Natural Resources,* 574 P.2d 1266, 1271 (Alaska 1978),[1] and the burden of proving invalidity is on the challenger, in this case, Anderson.

### A. *Is the Regulation Within the DEC's Scope of Authority?*

The state contends that 18 AAC 72.065(e) and (f) were promulgated pursuant to authority specifically delegated to the DEC by four statutes. Alaska Statute 44.46.-020 [2] gives the DEC primary responsibility for the development of policies related to Alaska's environment and for the adoption and enforcement of regulations for preventing and abating "water, land, subsurface land and air pollution, and other ... potential sources of pollution." This statute also gives the DEC the authority to adopt regulations for preventing public health nuisances and regulating sanitary practices in the interest of public health. AS 44.46.020(5).

Second, AS 46.03.020(10) grants the DEC the authority to adopt regulations providing for the control and prevention of pollution and for the protection of public water supplies.[3]

The state also finds authority in AS 46.-03.050, which grants the DEC jurisdiction to prevent water pollution.[4] Finally, AS 46.03.090 is cited as authority; that statute specifically allows the DEC to require the submission of plans for waste disposal or treatment for subdivisions.[5]

---

**1.** *See also Kalmakoff v. State, Commercial Fisheries Entry Comm'n,* 693 P.2d 844, 853 (Alaska 1985) (where legislature directs agency to design regulations, the regulations are not overturned if they are consistent with a statute's purpose, reasonably necessary to carry out the purpose, and reasonable).

**2.** AS 44.46.020 provides in part:
The Department of Environmental Conservation shall
(1) have *primary responsibility* for coordination and development of policies, programs and planning related to the environment of the state and of the various regions of the state;
(2) have primary responsibility for the adoption and enforcement of regulations setting standards for the prevention and abatement of all water, land, subsurface land and air pollution, and other sources or potential sources of pollution of the environment, including by way of example only, petroleum and natural gas pipelines;
(3) promote and develop programs for the protection and control of the environment of the state;
(4) take actions that are necessary and proper to further the policy declared in AS 46.03.010;
(5) *adopt regulations for*

(A) *the prevention and control of public health nuisances;*
(B) the regulation of sanitation and sanitary practices in the interest of public health[.]
(Emphasis added).

**3.** AS 46.03.020 provides in part:
The department may
. . . .
(10) adopt regulations necessary to effectuate the purposes of this chapter, including, by way of example and not limitation, regulations providing for
(A) control, prevention and abatement of air, water, or land or subsurface land pollution;
. . . .
(C) protection of public water supplies by establishing minimum drinking water standards, and standards for the construction, improvement, and maintenance of public water supply systems[.]

**4.** AS 46.03.050 provides:
The department has jurisdiction to prevent and abate the pollution of the waters of the state.

**5.** AS 46.03.090 provides:
The department may require the submission of plans for sewage and industrial waste dis-

Essentially, the state contends that these statutes specifically delegate to the DEC authority to enact regulations such as 18 AAC 72.065(e) and (f), since that agency has the necessary expertise to determine the best means for preventing pollution and preserving the environment. They further argue that subsections (e) and (f) are reasonably necessary to carry out the purposes of the enabling statutes, because they are the enforcement provisions which ensure compliance with subsections (a) through (d), which are undeniably valid. Anderson, however, argues that none of these statutes give the DEC "absolute and complete authority to require procedures that flatly ignore and conflict with" other statutes. He argues that subsections (e) and (f) are "not based upon clear authority from these statutes," because none of them "authorize DEC to require its approval of subdivision plans before recording the final plat or selling lots."

■ We find that these regulations are both reasonably necessary and consistent with the statutes.[6] *See Kelly*, 486 P.2d at 911. They are reasonably necessary because, without subsections (e) and (f), which require DEC approval as a prerequisite to recording and sale, subdivision developers could very easily ignore the valid "requirements" of 18 AAC 72.065(a) through (d). Without (e) and (f), the provisions of (a) through (d) would still theoretically require the submission of data, DEC review, and DEC attachment of "terms and conditions to subdivision plans to ensure compliance;" however, the developer would be able to record and sell lots even if the data submission and DEC re-

view revealed a faulty wastewater disposal plan.[7] This would clearly be an undesirable result. These provisions are the means by which the DEC can regulate to control pollution; through 18 AAC 72.065(e) and (f), there is assurance that new subdivision planners will provide safe, effective wastewater treatment works and disposal systems.

These regulations are also consistent with the enabling statutes. Even though the legislature did not expressly state that the DEC could require its approval prior to recordation and sale,[8] it did give the DEC the *duty* to adopt and enforce regulations regarding pollution and sanitation, AS 44.46.020(1), (5), and the express *authority* to adopt regulations providing for pollution prevention. AS 46.03.020(10)(A).[9] There is no basis for the contention that 18 AAC 72.065(e) and (f) are inconsistent with the DEC's authority to regulate in environmental matters. The DEC has not exceeded the power delegated to it by the legislature.

### B. *Is the Regulation Reasonable?*

■ Anderson argues that 18 AAC 72.065(e) and (f) are unreasonable because septic disposal plan approval is already required at the building stage by a different regulation, 18 AAC 72.060 (eff. 8/10/73; am. 12/30/82). We are not persuaded by this argument. 18 AAC 72.060 specifically states that plan approval is *not* required for "single-family dwellings using an onsite domestic wastewater system meeting the requirements of this chapter." 18 AAC 76.060(a). Thus, unless 18 AAC 72.065(e) and (f) are in place, there is no provision

posal or treatment or both for a publicly or privately owned or operated industrial establishment, community, public or private property subdivision or development.

6. The construction of these statutes is a matter "particularly within the special competency of this court." *Earth Resources v. State, Dep't of Revenue*, 665 P.2d 960, 965 n. 8 (Alaska 1983).

7. As the state suggests, without the regulatory enforcements in the form of (e) and (f), the DEC could only "force" compliance with its goal (*i.e.,* proper, healthy, safe plans for wastewater treatment and disposal) by resorting to the courts to seek injunctive relief on a case by case basis.

8. Generally, an agency does not need a specific grant of power to adopt each individual provision of a regulation. "[T]he question of implied administrative regulatory authority was settled long ago...." *Chevron U.S.A. v. LeResche*, 663 P.2d 923, 928 n. 11 (Alaska 1983) (statutes giving the Department of Natural Resources the authority to "adopt reasonable rules and regulations," and giving them the responsibility to maximize state profits from oil and gas, together implied the authority for regulations requiring oil and gas explorers to obtain a permit and submit data).

9. *See supra* notes 2 & 3 for text of statutes.

for approval of wastewater systems for certain dwellings.

Anderson next contends that there is a less restrictive means of promoting pollution control; he would require plan approval only at the *building* stage, because, he argues, it is premature to require approval prior to recording and sale.

Under *Kelly*, we do not require a showing that the regulation is the only or most effective means of carrying out department goals. We simply "determine whether the regulation is reasonable and not arbitrary." *Kelly*, 486 P.2d at 911. "[W]e should not examine the content of the regulation to judge its wisdom...." *Id.*

■ On this basis, we do not think that the regulations are unreasonable or arbitrary. On the contrary, subsections (e) and (f) embody a very practical method for accomplishing the goal of insuring safe disposal systems in newly formed subdivisions. When plan review and approval is done at this early stage in subdivision development, problems are more easily solved by, for example, simply redrawing lot lines. Also, as the state argues, it is more cost-effective for the developer to have the entire subdivision reviewed and approved at one time; he is able to pass on the costs to lot purchasers, and such purchasers may in turn be assured that their property is suitable for a disposal system. We conclude that the provisions are reasonable and not arbitrary.

### C. *Does the Regulation Conflict with Other State Statutes?*

The main thrust of Anderson's argument is that the legislature cannot have intended to give the DEC the authority to make wastewater treatment works and disposal system approval a prerequisite to recording, because such a provision would directly conflict with the statutes which delegate to the *borough planning commission* the right to approve subdivision plans. He contends that since 18 AAC 72.065(e) and (f) directly conflict with those statutes, and "purport to give DEC power over the local platting authority," they are invalid. Anderson relies on AS 40.15.010, which appears in the chapter entitled "Subdivisions and Dedications." That statute provides:

> Before the lots or tracts of any subdivision or dedication may be sold or offered for sale, the subdivision or dedication shall be submitted for approval to the authority having jurisdiction, as prescribed in this chapter. The regular approval of the authority shall be shown on it or attached to it and the subdivision or dedication *shall be filed for record in the office of the recorder.* The recorder shall not accept a subdivision or dedication for filing unless it shows this approval. If no platting authority exists as provided in §§ 70–130 of this chapter, lands may be sold without approval.

(Emphasis added). In addition, Anderson reads AS 40.15.070 as making "the planning commission, not DEC ... the final authority on whether or not a subdivision may be recorded," [10] and he argues that AS 29.40.010 gives local platting authorities sole power over the entire platting process.[11]

The goal of statutory construction is to give effect to the legislature's intent, with

**10.** AS 40.15.070 provides:

If land proposed to be subdivided or dedicated is situated within a first or second class borough the *proposed subdivision or dedication shall be submitted to the borough planning commission for approval.* If the land is situated within a city in the unorganized borough or the third class borough the proposed subdivision or dedication shall be submitted to the city planning commission for approval. *The borough planning commission is the platting authority for the first or second class borough,* the city planning commission is the platting authority for the city, and the division of lands is the platting authority in the remaining areas of the state and third class borough for the change or vacation of existing plats or a portion of such plats, as provided in § 75 of this chapter. If the borough or the city does not have a planning commission, the borough assembly or the city governing body, respectively, is the platting authority and the proposed subdivision or dedication shall be submitted to it. *No subdivision may be filed for record until it is approved by the platting authority.*

(Emphasis added).

**11.** AS 29.40.010 provides:

due regard for the meaning the statutory language conveys to others. *State v. Alex*, 646 P.2d 203, 208 & n. 4 (Alaska 1982). Absent special circumstances, we interpret phrases in statutes according to common and approved usage. AS 01.10.040; *Lynch v. McCann*, 478 P.2d 835, 837 (Alaska 1970).

■ We disagree with Anderson's contention that 18 AAC 72.065(e) and (f) conflict with these statutes, and find that the regulations and statutory provisions can be harmonized quite easily. Alaska Statute 29.40.010 authorizes local government to undertake planning, platting, and land use regulation. A plain reading of AS 40.15.010 leads a reasonable person to conclude that borough approval is required prior to recording of subdivisions, but there is simply nothing in this section, or in AS 40.15.070, to support the notion that the legislature intended local government to be the *exclusive* body with authority to grant approval. It is clear that the scheme of AS 40.15 was intended to ensure that local government had *some* authority over subdivisions. They can ensure that property taxes and assessments are paid (*see* AS 40.15.020), they can accept dedications of public streets (*see* AS 40.15.030), and they can assert some basic control over city planning and development. Despite the fact that AS 40.15.010 provides that a subdivision plat "shall be filed for record in the office of the recorder" after borough approval is granted, it cannot be said that the statute proscribes any other state, or even federal, body from having input into the approval process. 18 AAC 72.065(e) and (f) impose an additional burden on *developers;* the DEC is not attempting to regulate the recording office or to give that office the burden of compliance. We find no basis for concluding that the regulations interfere with any exclusive grant of authority to local government, and we therefore find no conflict.

(a) A first or second class borough shall provide for planning, platting, and land use regulation on an areawide basis.

(b) If a city in a borough consents by ordinance, the assembly may by ordinance del-

### CONCLUSION

We hold that 18 AAC 72.065(e) and (f) are valid. The regulations are consistent with the enabling statutes and reasonably necessary to carrying out the purposes underlying those statutes. Moreover, we find the regulations reasonable, not arbitrary, and in harmony with the rest of Alaska's statutory scheme. Accordingly, we REVERSE.

egate any of its powers and duties under this chapter to the city. The assembly may by ordinance, without first obtaining the consent of the city, revoke any power or duty delegated under this section.