Frank G. TURPIN, Commissioner, Department of Transportation and Public Facilities, and the State of Alaska, Appellant,

v.

NORTH SLOPE BOROUGH, and Tanana Chiefs Conference, Appellees.

No. S–4801.

Supreme Court of Alaska.

Aug. 26, 1994.

Joseph W. Geldhof and Jack B. McGee, Asst. Attys. Gen., Charles E Cole, Atty. Gen., Juneau, for appellant.

Darlene M. Erickson, Deputy Borough Atty., Anchorage, Thomas P. Amodio and Jonathan B. Rubini, Birch, Horton, Bittner & Cherot, Anchorage, for appellee North Slope Borough.

Michael J. Walleri, Fairbanks, for appellee Tanana Chiefs Conference.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

The James Dalton Highway, also known as the North Slope Haul Road, runs approximately 425 miles from Livengood to Prudhoe Bay, Alaska. It is the only maintained land route linking central Alaska to the northern coast of Alaska. A substantial portion of the James Dalton Highway is located within the boundaries of the North Slope Borough (NSB).

The Acting State Director of the Bureau of Land Management (BLM) of the United States Department of the Interior granted a right-of-way for the construction of the highway to the State of Alaska on May 2, 1974. The grant was made subject to a provision that "the right-of-way shall be used for only the construction, operation, and maintenance by the state of a public road and related public facilities."[1]

The highway was completed in the early 1970's by the Alyeska Pipeline Service Company, under contract with the State of Alaska, using a mix of state, federal, and private funds.[2] Management responsibility for the highway returned to the State of Alaska, Department of Transportation and Public Facilities (DOT) in 1978.

In October 1978, DOT adopted regulations that closed the Dalton Highway to use or travel by any vehicle (except an emergency vehicle) that did not have a special permit.[3] 17 Alaska Administrative Code (AAC) 30.010. The regulations make permits available only to official, industrial, and commercial vehicles. 17 AAC 30.030.

In 1980, the Alaska legislature enacted AS 19.40.100:

**1.** The Trans–Alaska Pipeline System (TAPS), agent for several major oil companies, applied to BLM for a right-of-way for the pipeline under the Mineral Leasing Act, and for Special Land Use Permits for the construction of a haul road in 1969. *See Wilderness Soc'y v. Morton*, 479 F.2d 842, 849–50 (D.C.Cir.), *cert. denied*, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973). In 1970 an injunction was issued blocking the granting of the right-of-way under the Mineral Leasing Act. At that point the State attempted to obtain a right-of-way for a state public highway under 43 U.S.C. § 932 but was unsuccessful. *See Hamerly v. Denton*, 359 P.2d 121, 123 (Alaska 1961) (operation of 43 U.S.C. § 932 in Alaska).

The Trans–Alaska Pipeline Authorization Act (TAPA Act) authorized the Secretary of the Interior to issue rights-of-way and permits necessary for or related to construction, operation, and maintenance of the trans-Alaska oil pipeline system including roads and airstrips. 43 U.S.C. § 1652(b). BLM issued Alaska its right-of-way pursuant to the TAPA Act.

**2.** On December 5, 1973, the portion of the road between Livengood and Prospect Creek was placed by the Federal Highway Administration on the Federal Aid Highway System as a secondary highway route designated as FAS–681. The route was extended to Prudhoe Bay in 1974.

**3.** The regulations use "Dalton Highway" to refer to the portion north of Dietrich Camp. 17 AAC 30.070(4). Because only that portion is in dispute, subsequent references to restrictions on access to the highway will refer to the northern portion. Although the regulations initially allowed public access to the lower portion only during the summer, in 1984 DOT amended the regulations to allow year-round public access.

(a) The department shall maintain the highway and keep it open to industrial or commercial traffic throughout the year.

(b) "Industrial or commercial traffic" means

(1) travel necessary and related to resource exploration and development or to support of those activities, if the individual engaged in those activities has all necessary permits;

(2) travel necessary and related to access by local residents to their property; or

(3) motor carriers engaged in commerce.

At that time, the legislature also enacted AS 19.40.110:

The department shall maintain the section of the highway between the Yukon River and Dietrich Camp and shall keep that section of the highway open to use by the public between June 1 and September 1 each year.

The highway between Dietrich Camp and Prudhoe Bay has always been closed to unrestricted public travel.

Early in June 1991 the Commissioner of DOT, Frank Turpin, made a policy decision to open the northern portion of the highway to unrestricted public use. DOT was subsequently notified that the decision conflicted with existing regulations. In response, DOT issued a notice on June 11, 1991 stating that it planned to repeal 17 AAC 30, which requires vehicles traveling on the Dalton Highway to obtain a permit. Public comments were invited on the proposed repeal with all comments due by July 15, 1991. The NSB and Tanana Chiefs Conference (TCC), who opposed opening the entire highway to the public, filed a complaint in superior court for injunctive relief. They objected that DOT had not allowed enough time to hear, weigh, and respond to public comments, that DOT had disregarded administrative procedure, and that the repealer conflicted with the governing statutory regulatory scheme controlling use of the Dalton Highway.

Superior Court Judge Ripley issued a preliminary injunction. Judge Ripley found that 17 AAC 30.010–.070 restricted access to the Dalton Highway and that it was probable that those regulations could be repealed only in accordance with the procedures set forth in AS 44.62.060, 44.62.180 and 44.62.210.

Judge Ripley further found that the State had not observed procedures required by the Administrative Procedure Act (APA), AS 44.-62.010–.300, that the NSB and TCC would suffer irreparable harm, and that requiring DOT to follow those directives would cause no harm to the State. Therefore, he ordered that the Dalton Highway remain closed to public travel "until ... the amendment or repeal of 17 AAC 30.010–.070 takes legal effect as provided in AS 44.62.180."

DOT then issued a written decisional document addressing the various concerns raised by the public, the NSB and TCC. The next day Commissioner Turpin signed an order repealing 17 AAC 30 and filed it with the Lieutenant Governor. The repeal was intended to take effect on August 30, 1991.

In response, the NSB and TCC moved the superior court to establish that the current preliminary injunction was still in effect because DOT had not complied with the provisions of the APA, or in the alternative, to order additional injunctive relief continuing closure of the highway. At the hearing, Judge Michalski continued the injunction against repeal of 17 AAC 30 on the ground that DOT remained in violation of the APA for failure to prepare a fiscal note during the repeal process. The superior court issued a Declaratory Judgment and Permanent Injunction holding in part that "the Dalton Highway may not be opened to unrestricted public traffic ... unless ... the Alaska Legislature amends or repeals the restrictions set forth in the statutes."[4] The State now brings this appeal.

---

4. The superior court's permanent injunction reads in full:

The State of Alaska is hereby enjoined from executing the purported regulatory amendment which this court has declared to be void due to procedural requirements and invalid as inconsistent with statutory provisions of A.S. 19.40.

## I. *EXECUTIVE ACTION OPENING THE DALTON HIGHWAY TO UNRESTRICTED TRAVEL BY THE GENERAL PUBLIC DOES NOT CONTRAVENE THE DALTON HIGHWAY ACT*

■ DOT appeals from the superior court's determination that "the Dalton Highway may not be opened to unrestricted public travel north of Dietrich Camp unless ... the Alaska legislature amends or repeals the restrictions set forth in ... [A.S. 19.40.010–.290]." The superior court noted that its holding was "supported by the plain meaning of the statutes, by fundamental rules of statutory construction and by evidence of legislative intent." In particular, it found that the "statutory scheme, particularly A.S. 19.40.100 and .110, restricts use of the Dalton Highway north of Dietrich Camp to industrial or commercial traffic."

The NSB defends the superior court's ruling, arguing that the statutes are plain on their face; that they cannot be read independently of the purpose of the James Dalton Highway Act (the "Act"), AS 19.40.010 et seq.; that the Act's purpose is to control access to the Dalton Highway; and that the Act's provisions specifically limit vehicle traffic on the northern portion of the Dalton Highway to commercial or industrial traffic. TCC adds that the Commissioner of DOT, in promulgating and repealing regulations, was bound to do so in accordance with the Act, which articulates certain policy concerns that must be affirmatively reflected in the regulations.

DOT contends that

the most reasonable reading of these statutes is that they constitute a legislative direction to the executive branch to keep the highway open *at least* to the degree specified by their text. In other words, AS 19.40.100 and 19.40.110 set *minimum* requirements that DOT/PF is required to meet in regulating the use of the Dalton Highway.

It therefore follows, DOT argues, that the statutes do not prohibit DOT from repealing

17 AAC 30.010, thereby opening the entire Dalton Highway to unrestricted travel by the general public.

We find DOT's interpretation persuasive. We think it of particular significance that the initial grant of a right-of-way from the federal government provides that

the right-of-way shall be used only for the construction, operation, and maintenance ... [by] the state of a *public road* and related public facilities.

(Emphasis added).

This explicit "public" characterization of the nature of the right-of-way grant is reiterated in the Declaration of Policy section at the outset of the Act:

The legislature finds and declares that there is an immediate need for a *public highway* from the Yukon River to the Arctic Ocean and that this *public highway* should be constructed by the State of Alaska at this time.

AS 19.40.010 (emphasis added).

Given these clear manifestations of intent by the state and federal governments, we believe that one cannot reasonably conclude that the plain meaning of AS 19.40.100 and AS 19.40.110 restricts travel by the general public on the Dalton Highway. The broad array of powers granted to DOT in regard to the planning, construction, maintenance, control (including closures) of any highway encompassed within the state's highway system also strengthen DOT's argument.[5] It follows that DOT has the general authority to open the entire length of the highway to unrestricted travel by the general public. Nothing in the legislative history of the Act reflects a legislative intent to constrain the authority of DOT to provide additional public access to the Dalton Highway at any time subsequent to the enactment of the Act. If the legislature had intended to permanently close all, or any portion of, the Dalton High-

---

**5.** Alaska Statute 19.05.010 makes DOT "responsible for the planning, construction, maintenance, protection, and control of the state highway system." Alaska Statute 19.05.040(5) states that DOT may "control access to highways." And under AS 19.40.120, "The provisions of AS 19.10.100 apply to the closure of the highway by the department."

way to travel by the general public it could have fashioned such a provision explicitly.[6]

## II. THE DEPARTMENT OF TRANSPORTATION VIOLATED THE REQUIREMENTS OF AS 44.62.195 OF THE ADMINISTRATIVE PROCEDURE ACT BY FAILING TO PREPARE A FISCAL NOTE IN CONJUNCTION WITH ITS PROPOSED REGULATORY CHANGE

■ Alaska Statute 44.62.195 requires any department affected by the repeal of a regulation to prepare an estimate of foreseeable appropriations increases.[7]

> If the adoption, amendment, or repeal of a regulation would require increased appropriations by the state, the department or agency affected shall prepare an estimate of the appropriation increase for the fiscal year following adoption, amendment, or repeal of the regulation and for at least two succeeding fiscal years.

Ch. 16, § 1, SLA 1980.

DOT argues that "in effect, AS 44.62.[195] requires the executive branch to provide an estimate of the costs associated with the adoption or repeal of regulations." Having given notice to the public that the repeal of 17 AAC 30 will not require additional appropriations, DOT asserts it has substantially complied with the APA.

Yet opening the Dalton Highway to the general public potentially affects agencies other than DOT. The NSB presented convincing evidence that the Department of Public Safety, the Department of Fish & Game, and the Department of Administration all anticipated a need for additional appropriations in the event the Dalton Highway was to be opened to the general public.[8]

In addition, the legislature recognized the potential costs to agencies other than DOT if the Dalton Highway was opened to the public in its 1991 budget appropriation limitations. It conditioned the Department of Public Safety's appropriations on the absence of expenditures for costs associated with opening the Dalton Highway. It did so expressly and independently of DOT appropriations.

The superior court's findings highlight additional evidence contradicting DOT's position:

> 15. Memorandum and other exhibits prepared by or for DOT/PF also contradict the fiscal statement contained in the June 11 Notice.

> 16. For example, John Horn, The Northern Regional Director of DOT/PF, estimates that the Dalton Highway could need as much as $25 million in additional maintenance repairs and road work.

> 17. Furthermore, one reason advanced by the Department for opening the Highway is the State's desire to obtain federal

---

6. *See LeSuer–Johnson v. Rollins–Burdick Hunter of Alaska*, 808 P.2d 266, 267 (Alaska 1991).

7. We generally give the word "shall" mandatory effect. *See Fowler v. City of Anchorage*, 583 P.2d 817, 820 (Alaska 1978) ("Unless the context otherwise indicates, the use of the word shall denotes a mandatory intent.").

8. The legislature also requires that departments that anticipate additional appropriations because of pending legislation prepare fiscal notes. In 1990, the legislature contemplated passing Senate Bill 366, which would have opened the Dalton Highway to unrestricted use. The Department of Public Safety estimated a need for an additional $2.7 million in fiscal year 1991 and approximately $600,000 for each subsequent fiscal year:

> With the Dalton Highway open throughout the entire year for public travel, a full range of law enforcement services must be provided. Increased activity is projected for both Alaska State Trooper enforcement patrol and investi-

gation to provide for accident response, highway patrol, criminal investigation, and search and rescue services.... Four additional State Trooper positions ... will be needed to provide adequate enforcement. One trooper will be assigned to Prudhoe, two at Coldfoot, and one at Seven Mile.

. . . .

> This fiscal note does not address response to a major accident such as one involving a tour bus for example. The cost that would be associated with maintaining a rescue capability to deal with such a catastrophe is clearly prohibitive. In such an event, the Department of Public Safety would require substantial assistance from the private sector and/or the military.

The Department of Administration estimated a need for an additional $1.4 million in 1991, and $163,000 every year thereafter; the Department of Fish & Game estimated a need for approximately $74,000 per year.

highway funds. The Department agrees that these funds are necessary for the maintenance and repair of the Dalton Highway. No matter from what source they are derived, these expenditures will require appropriation.

18. Similarly, the Department attached to its decisional document as Exhibit "F", a memorandum from Richard Burton, Commissioner of the Department of Public Safety ("DPS"). Although the memorandum states that existing resources are sufficient to meet current fiscal year needs, Commission[er] Burton assumes the DPS "will obtain additional help in the future."

Given this much evidence that opening the Dalton Highway to unrestricted travel by the general public will require additional appropriations, we hold that the superior court did not err in concluding that DOT acted arbitrarily and capriciously in failing to substantially comply with the fiscal notes requirements of AS 44.62.195.

## III. *APPROPRIATENESS OF INJUNC-TIVE RELIEF*

DOT argues that since the superior court's permanent injunction has the effect of enjoining it from repealing 17 AAC 30, the issuance of the injunction is not tailored sufficiently narrowly. DOT further claims that the practical effect of the injunction is to curtail the exercise of the right to travel guaranteed by the Alaska Constitution and the United States Constitution [9] and to violate the separation of powers doctrine. Finally, DOT asserts that there is no nexus between the alleged harm and the alleged legal infirmity.

The NSB responds that the injunction is no broader than necessary to effect the appropriate relief and that it does nothing more than maintain the status quo. In brief, the NSB argues that the preliminary injunction merely enjoins DOT from repealing 17 AAC

30 until all the procedural requirements of the APA have been met.

The NSB further responds that irreparable harm should be presumed when the executive branch attempts to circumvent the procedures required under the APA. The NSB also argues that since no portion of DOT's budget may be spent on repair, maintenance or patrol of the Dalton Highway, the burden will fall on the NSB. The NSB submitted affidavits supporting its claim of harm to governmental and natural resources if the Dalton Highway is opened to the general public without coordinated planning between involved departments of the state.

 The failure of an agency to substantially comply with APA procedures in adopting regulatory changes renders the action invalid. *See Kenai Peninsula Fisherman's Co-op Ass'n, Inc. v. State,* 628 P.2d 897, 906 (Alaska 1981); *Coghill v. Boucher,* 511 P.2d 1297, 1304–05 (Alaska 1973); *Morkunas v. Anchorage Tel. Util.,* 754 P.2d 1117, 1120 (Alaska 1988). As noted, here DOT's violation of the APA cannot be characterized as insubstantial. Compliance with the procedures mandated by the APA contemplates public notice and disclosure of the fiscal consequences in order to facilitate public comment on the particular proposal.

Given our conclusion that the Act does not prohibit general year-round access by the public, the superior court's injunction operates only to invalidate the defective procedures used by DOT. DOT is free to reconsider the matter, formulate an appropriate fiscal note, furnish the requisite notice, consider comments on any proposed repealer, and then take appropriate action. In light of these circumstances we conclude that the superior court properly exercised its equitable powers in issuing the questioned injunction.[10]

---

9. *See, e.g., Zobel v. Williams,* 457 U.S. 55, 60 n. 6, 102 S.Ct. 2309, 2312–13 n. 6, 72 L.Ed.2d 672 (1982) (United States Constitution); *Alaska Pacific Assurance Co. v. Brown,* 687 P.2d 264, 271 & n. 10 (Alaska 1984) (Alaska Constitution).

10. Our affirmance of the superior court's ruling that DOT failed to comply with the requirements

of AS 44.62.195 has made it unnecessary to address any of the remaining issues sought to be raised by the parties. In particular we do not address the following arguments tendered by the NSB in support of the superior court's judgment: (1) DOT did not provide interested parties with a fair and adequate opportunity to offer their comments and concerns; (2) DOT did not fairly con-

AFFIRMED in part, REVERSED in part.

BURKE, J., not participating.*

sider the comments and concerns of interested parties; (3) DOT's unilateral decision to open the Dalton Highway violates the terms of a Memorandum of Understanding between the NSB and the State; (4) the legal review by the Department of Law was inadequate and facially defective; and (5) the proposed regulatory action is inconsistent with a valid condition placed by the legislature on DOT's appropriations.

* Justice Burke participated in oral argument but retired from the court before the opinion was rendered.