MECHANICAL CONTRACTORS OF
ALASKA, INC., Appellant,

v.

STATE of Alaska, DEPARTMENT OF
PUBLIC SAFETY, State of Alaska, De-
partment of Community and Economic
Development, Colonel Glenn G. Godfrey,
Commissioner, and Debbie B. Sedwick,
Commissioner, Appellees.

No. S–10823.

Supreme Court of Alaska.

May 7, 2004.

Rehearing Denied June 18, 2004.

Joseph W. Geldhof, Law Office of Joseph W. Geldhof, Juneau, for Appellant.

Dean J. Guaneli, Assistant Attorney General, and Gregg D. Renkes, Attorney General, Juneau, for Appellees.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Mechanical Contractors of Alaska, Inc. appeals the superior court's grant of summary judgment in favor of the Department of Public Safety and the Department of Community and Economic Development that upheld the departments' adoption of the International Mechanical Code. Mechanical Contractors argues that the departments exceeded their statutory authority and violated the Administrative Procedures Act when they adopted the International Mechanical Code in 2001. Because the two departments have authority to adopt the code, and because they substantially complied with the Administrative Procedures Act, we affirm the decision of the superior court.

## II. FACTS AND PROCEEDINGS

The Department of Public Safety (DPS) has a broad statutory mandate to "adopt regulations for the purpose of protecting life and property from fire and explosion by establishing minimum standards ... for fire and life safety criteria in ... public buildings" and residential buildings of four or more units.[1] For more than two decades, DPS has adopted the building, mechanical, and fire codes for the state. These integrated codes govern construction standards in all buildings under DPS's jurisdiction and are typically updated every three years as new model codes are published by the nation's model building code organizations. The building code is the primary tool for regulating construction standards, and all other codes must integrate with the building code.

---

**1.** AS 18.70.080(a)(2).

In 2001 DPS adopted the International Building, Fire, and Mechanical Codes. Only the mechanical code is the subject of this litigation.

This lawsuit arose due to changes in the way the nation's three model building code organizations publish the model codes. Until the mid–1990s three organizations—Building Officials and Code Administrators, International Conference of Building Officials, and Southern Building Code Congress International—each published regional building codes. Until 1997 the International Conference of Building Officials jointly published the Uniform Mechanical Code with the International Association of Plumbing and Mechanical Officials. In 1994 the three building code organizations formed the International Code Council, which now publishes one national building code rather than three separate regional codes.[2] Consequently, at the time that DPS adopted the International Mechanical Code in 2001, the International Building Code was the only model building code published in the United States. Only the International Fire Code and International Mechanical Code are designed to correlate fully with this code.

When DPS began its periodic update of the construction codes in 1999, the 2000 International Building Code was the most current code available and the only national code. Because Alaska's existing fire and mechanical codes did not fully integrate with the International Building Code, DPS began a two-year process to adopt the International Fire and Mechanical Codes. DPS notified the Department of Community and Economic Development and the Department of Labor about this process because these agencies also regulate the construction industry. The legislature allocated $98,100 in fiscal year 2001 for adoption of the new codes, a process that would entail extensive review of the current codes, expanded public hearings, statewide meetings with trade organizations, and a complete revision of Alaska Administrative Code (AAC) Title 13, chapters 50, 52, and 55.

In August 2000 DPS hired Ross Fosberg to coordinate adoption of the International Codes. Fosberg formerly served as the chief of the Anchorage Fire Department and as the Anchorage Fire Marshal, and he had thirteen years of experience as a fire protection consultant. He contacted a broad range of organizations impacted by the state's building codes and asked them to send representatives to participate in working group meetings to draft proposed regulations adopting the 2000 version of the International Building, Fire, and Mechanical Codes. These meetings were held in Fairbanks, Soldotna, Juneau, and Anchorage.

Pursuant to the Alaska Administrative Procedures Act,[3] DPS arranged for statewide public notice of the proposed regulations. After notice was published, DPS discovered a typographical error: The notice mistakenly stated that DPS proposed to repeal the Uniform Mechanical Code and readopt the International Fire Code (rather than the International Mechanical Code (IMC)). A corrected notice was sent to the individuals and organizations on the list of interested persons, but Mechanical Contractors was not notified due to an oversight. Additionally, the incorrect notice was published in some newspapers.

After considering public comment, DPS adopted the regulations in March 2001. Because Mechanical Contractors complained that it did not receive notice of the proposed changes and that incorrect notice was published in some newspapers, DPS re-opened the public comment period and published a corrected public notice. DPS also mailed notice to each licensed mechanical administrator in Alaska. DPS received significant public comment both in favor of the proposed adoption and in opposition to it. The Chair of the legislature's Administrative Regulation Review Committee recommended delaying adoption of the IMC to allow the legislature an opportunity to address the issue, and the legislature's Division of Legal and Research Services opined that adoption of the IMC

---

**2.** These organizations merged in 2002. Press Release, International Code Council, Building safety groups vote to approve ICC consolidation (Oct. 1, 2002), at http://www.ic-csafe.org/news/nr/021001consolidation.htm (last visited Mar. 1, 2004).

**3.** AS 44.62.190

might exceed DPS's statutory authority. Based upon public comment, DPS made additional changes to the proposed regulations and agreed to delay implementation by several months. DPS re-adopted the regulations in June 2001 with an effective date of September 15, 2001.

Because the Department of Community and Economic Development (DCED) is responsible for testing and licensing mechanical administrators, it updated its examinations to reflect the IMC as the state's testing standard rather than the Uniform Mechanical Code, which it had used since 1988. This required an amendment to DCED regulations to allow the department to base the examinations on the mechanical code adopted by DPS.[4] Existing statutes relating to DCED's testing and licensing authority referred to the Uniform Mechanical Code.[5]

After the regulations took effect, Mechanical Contractors moved for a preliminary injunction to block implementation of the IMC on the grounds that its adoption violated the Administrative Procedures Act and conflicted with statutes that specifically referenced the Uniform Mechanical Code. The superior court denied the preliminary injunction. The state then moved for summary judgment and Mechanical Contractors cross-moved for summary judgment. The superior court granted summary judgment to the state, finding that adoption of the International Mechanical Code was within the departments' statutory authority and that the agencies substantially complied with the requirements of the Administrative Procedures Act. Mechanical Contractors now appeals.

## III. STANDARD OF REVIEW

We review a grant of summary judgment *de novo* and will affirm if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[6] We review questions of law, including the interpretation of statutes and regulations, using our independent judgment.[7] As we discussed in *O'Callaghan v. Rue*, we apply a three-part analysis to assess the validity of administrative regulations.[8]

First we must determine whether the agency has statutory authority to promulgate regulations.[9] If an agency has acted within its authority, we then consider "whether 'the regulation is consistent with and reasonably necessary to implement the statutes authorizing its adoption,' and whether it is reasonable and not arbitrary." [10] In making the consistency determination, we use our independent judgment unless the issue involves agency expertise or the determination of fundamental policy questions on subjects committed to an agency's discretion, in which case we employ a rational basis standard and defer to an agency's determination so long as it is reasonable and not arbitrary.[11] Whether a regulation is reasonably necessary to implement a statute is a fundamental policy determination which will be reviewed using a rational basis standard.[12] We also use a deferential standard to conduct the "reasonable and not arbitrary review." [13] Finally, we will consider whether the regulation conflicts with any other statutes.[14] This is a legal question to which we apply our independent judgment.[15]

## IV. DISCUSSION

### A. DPS and DCED Acted Within Their Statutory Authority When They Adopted the IMC.

Mechanical Contractors first claims that the departments exceeded their statuto-

4. 12 AAC 39.992(b); 12 AAC 21.990(7).

5. AS 08.40.270(a)(3); AS 08.40.490(3)(A).

6. *Therchik v. Grant Aviation*, 74 P.3d 191, 193 (Alaska 2003).

7. *Id.*

8. 996 P.2d 88, 94 (Alaska 2000).

9. *Id.* (citing *Warner v. State*, 819 P.2d 28, 30–31 (Alaska 1991)).

10. *Id.* (quoting *Chevron U.S.A., Inc. v. LeResche*, 663 P.2d 923, 927 (Alaska 1983)).

11. *Id.* at 94–95.

12. *Id.*

13. *Id.* at 95.

14. *Id.*

15. *Id.*

ry authority by adopting the IMC in violation of four express statutory provisions referencing the Uniform Mechanical Code. Although none of these statutes relates to the authority of the Department of Public Safety to adopt fire and life safety codes, Mechanical Contractors argues that DPS cannot use its general grant of statutory authority to adopt a mechanical code that conflicts with specific references to the Uniform Mechanical Code in other sections of the Alaska Statutes. These statutes include: AS 08.18.171(7)(D) and AS 08.40.490(3)(A), which define a mechanical administrator and mechanical contractor as persons who "install[ ] or modify[ ] mechanical piping and systems . . . subject to . . . the Uniform Mechanical Code"; AS 08.40.270(a)(3), which requires familiarity with the Uniform Mechanical Code in order to be licensed as a mechanical administrator; and AS 18.56.300(e)(3)(B), which governs construction standards for homes financed through the Alaska Housing Finance Corporation.

To determine whether the departments exceeded their statutory authority, we apply the three-part *O'Callaghan* test described above. Mechanical Contractors's argument is most relevant to the third part of this analysis, whether the regulations conflict with other statutes.

### 1. DPS and DCED have authority to issue regulations.

█ The first question is whether DPS and DCED have authority to issue regulations. Even Mechanical Contractors acknowledges that DPS has a "fantastically broad" authority to adopt regulations. Indeed, DPS not only can issue regulations, but it must do so: "The Department of Public Safety shall adopt regulations for the purpose of protecting life and property from fire and explosion by establishing minimum standards for . . . fire and life safety criteria in . . . public buildings" and residential buildings with four or more dwelling units.[16] DCED likewise has express statutory authority and responsibility to adopt regulations: "The department shall adopt regulations under AS 44.62 (Administrative Procedure Act) relating to the examination and licensing of mechanical administrators."[17]

### 2. Adoption of the IMC was consistent with and reasonably necessary to implement the statutes authorizing its adoption and was reasonable and not arbitrary.

#### a. Adoption of the IMC was consistent with the statutes authorizing its adoption.

█ The next question is whether adoption of the IMC was consistent with the statutes authorizing its adoption. In determining whether a regulation is consistent with an agency's statutory authority, we exercise our independent judgment unless the issue involves agency expertise or fundamental policy considerations, in which case we use a rational basis standard.[18] The superior court found that adoption of a mechanical code involves fundamental policy questions and it thus applied the more deferential standard of review. Mechanical Contractors argues that the superior court erred in applying this deferential standard. But in our view, the superior court's consistency determination withstands scrutiny even under the independent judgment test.

As discussed above, DPS is *required* to adopt regulations to establish minimum standards for fire and life safety in commercial and some residential buildings.[19] Mechanical codes cover air flow systems, and these systems impact upon fire and life safety. Thus, adoption of a mechanical code by DPS is consistent with the statutes authorizing its adoption, and not even Mechanical Contractors challenges DPS's authority to adopt the Uniform Mechanical Code. At issue is whether adoption of the IMC is consistent with the same grant of statutory authority under which DPS previously adopted the Uniform Mechanical Code. Because nothing in AS

---

16. AS 18.70.080(a)(2).

17. AS 08.40.240.

18. *O'Callaghan*, 996 P.2d at 94.

19. AS 18.70.080.

18.70.080 requires adoption of a particular mechanical code, and because DPS's decision was reasonable, we conclude that adoption of the IMC was consistent with the statutes authorizing its adoption.

We likewise conclude that DCED's adoption of the IMC as a testing standard is consistent with its statutory authority. DCED is required to conduct licensing examinations for mechanical administrators and to establish standards for license renewal.[20] Alaska Statute 08.40.270(a)(3) requires DCED to administer examinations that assess an applicant's familiarity with the "Uniform Mechanical Code currently in effect in the state." When DPS repealed the Uniform Mechanical Code and replaced it with the IMC, the IMC became the mechanical code currently in effect in the state, and DCED was left with the choice of testing applicants on an obsolete code or amending its regulations to require competency in the code currently in effect. DCED's decision to adopt the IMC as the licensing standard is consistent with the legislature's intent when it established testing and licensing requirements for mechanical administrators.

The legislature established these requirements in 1988 to protect the public from shoddy workmanship and to establish uniform standards to govern the industry.[21] Testimony from committee meetings held to discuss establishment of licensing requirements for this trade focused on the lack of uniform standards and the problems that arise from improperly installed water, sewer, and heating systems.[22] For example, Eugene R. Rutland, the Executive Director of Mechanical Contractors of Fairbanks, testified in support of the licensing requirements and said that licensing should ensure basic competence to perform a specific service.[23] The state would ensure basic competence by testing mechanical administrators for familiarity with the codes under which they work;

and because the Uniform Mechanical Code was the mechanical code adopted by DPS at that time[24] it became one of the standards for professional competence in this trade. Once the IMC was adopted as the state's construction standard it was consistent for DCED to adopt this code as the standard for licensing.

### b. Adoption of the IMC was reasonably necessary to implement the statutes authorizing its adoption.

The next question is whether adoption of the IMC was reasonably necessary to implement the statutes authorizing its adoption. If we find that a regulation is consistent with the statutory purpose, we will not generally require a separate showing of reasonable necessity. As we stated in *State, Department of Revenue, Permanent Fund Dividend Division v. Cosio:*

> Strictly applied, inquiry into whether a regulation is necessary as a means to a legislative end would mire this court in questions of public policy and the advisability of possible alternatives. Such a searching inquiry is beyond our authority and expertise. It is a rare case where a regulation, although not inconsistent with the purpose of the statute, is wholly superfluous to the achievement of that purpose.[25]

The record indicates that DPS adopted the International Building Code because it was the most current building code available and the only national building code in existence. Additionally, DPS was concerned that a failure to adopt the most recent building code could jeopardize federal disaster relief funding because the Federal Emergency Management Agency provides full disaster relief funding only to states with fully updated building codes. DPS also adopted the IMC because it wanted a mechanical code that was consistent with both the International Build-

---

**20.** AS 08.40.240–.250.

**21.** *See* AS 08.40.210; Ch. 132, § 9, SLA 1988.

**22.** *See* H. Fin. Comm. Minutes (March 22, 1988) (comments of Eugene R. Rutland, Executive Director, Mechanical Contractors of Fairbanks).

**23.** *Id.*

**24.** *See* 13 AAC 50.020(12)(b) (1988) (adopting Uniform Mechanical Code by reference to Uniform Building Code).

**25.** 858 P.2d 621, 624 n. 1 (Alaska 1993).

ing and Fire Codes and because it believed that the IMC was superior to the Uniform Mechanical Code. Finally, DPS projected substantial cost savings in construction projects that used the IMC rather than the Uniform Mechanical Code.

Likewise, DCED adopted the IMC as the testing standard for mechanical administrators because DPS repealed the Uniform Mechanical Code and replaced it with the IMC. DCED updates its licensing examinations when DPS updates the model codes, and it amended its regulations to use the IMC as the testing standard when DPS adopted that code. If the IMC is the standard used by the construction industry in Alaska, requiring proficiency in this code is reasonably necessary to implement the examination standards of AS 08.40.270.

### c. Adoption of the IMC was reasonable and not arbitrary.

 To determine if a regulation is reasonable, we examine whether "the agency has taken a 'hard look' at the salient problems and has 'genuinely engaged in reasoned decision making.'"[26] Mechanical Contractors argues that DPS failed to engage in reasoned decision making before adopting the IMC and that the "fix was in from the beginning." According to Mechanical Contractors, DPS "harbored a pre-conceived agenda to adopt various international codes" and "demonstrated a complete lack of objectivity" in adopting the IMC. As evidence that adoption was arbitrary, Mechanical Contractors claims that DPS adopted the new code standard without fully considering the impact on other agencies that use the Uniform Mechanical Code.

DPS responds that it was reasonable to adopt the most current building code available, and that its decision to do so necessitated adoption of the corresponding fire and mechanical codes. DPS adopted the International Codes after a two-year process that included notification of other agencies, work

sessions throughout the state, and two public notice and comment periods. This process was funded by a specific appropriation from the legislature. The record documents substantial public interest in the new proposed code, and it shows that DPS revised the proposed regulations after each comment period.

The record is unclear when DPS became aware that adoption of the IMC would run up against other statutory references to the Uniform Mechanical Code. A letter from the Department of Labor, dated May 29, 2001, indicated its belief that the IMC would conflict with other statutes, and a June 7, 2001 letter from DCED raised the concern that adoption of the IMC would conflict with testing standards requiring use of the Uniform Mechanical Code. DPS received these letters before the expiration of the public comment periods on the proposed changes. DPS made specific exceptions in the IMC to accommodate use of other codes, such as the Uniform Plumbing Code, which is used by the Department of Labor. Additionally, it entered into a reimbursable services agreement with DCED to pay for the cost of updating the licensing examinations. As it developed, no reimbursement was necessary.

The record does not support the conclusion that adoption of the IMC was arbitrary and not reasonable, particularly given the deferential standard of review we use to make this determination.[27] The International Building Code was the most current building code available and represented the combined efforts of the three national building code organizations. The International Fire Code and IMC were developed for use with this code. DPS developed the new regulations adopting these codes over a two-year period, and it amended the proposed regulations based upon public comment. DPS made efforts to ensure that adoption of the code was consistent with the statutory requirements of

---

**26.** *Stepovak–Shumagin Set Net Ass'n v. State, Bd. of Fisheries,* 886 P.2d 632, 637 (Alaska 1994) (quoting *Gilbert v. State, Dep't of Fish & Game,* 803 P.2d 391, 398 (Alaska 1990)).

**27.** *O'Callaghan v. Rue,* 996 P.2d 88, 94–95 (Alaska 2000). *See also Gilbert,* 803 P.2d at 397 (holding that perfection not required for regulation to be reasonable; court's task is simply to determine whether regulation is reasonably related to agency's statutory mandate).

other agencies. Accordingly, adoption of the IMC was not arbitrary.

### 3. Adoption of the IMC does not conflict with other statutes.

 Mechanical Contractors argues that adoption of the IMC is *per se* invalid because DPS cannot use a general grant of authority to adopt a fire life safety code that conflicts with statutes that specifically refer to another model code.[28] DPS responds both that these statutes do not limit DPS's authority under AS 18.70.080 and that adoption of the IMC can be harmonized with the intent of these apparently conflicting statutory references to the Uniform Mechanical Code.

 Whether adoption of the IMC conflicts with other statutes is a question of law to which this court will apply its independent judgment.[29] When we engage in statutory construction we will presume "that the legislature intended every word, sentence, or provision of a statute to have some purpose, force, and effect, and that no words or provisions are superfluous."[30] At the same time,

> [s]trict construction does not require that statutes be given the narrowest meaning allowed by their language; rather, the language should be given a "reasonable or common sense construction, consonant with the objectives of the legislature." The intent of the legislature must govern and the policies and purposes of the statute should not be defeated.[31]

Determination of whether adoption of the IMC conflicts with other statutes requires

examination of the specific statutory language and the intent behind this language.

Three of the four statutory references to the Uniform Mechanical Code were enacted in legislation that created licensing requirements for mechanical administrators.[32] This legislation amended AS 08.40 to require a state license in order to work as a mechanical administrator.[33] It enacted section .270 of AS 08.40 to require DCED to test applicants on their familiarity with the Uniform Plumbing Code, Uniform Swimming Pool, Spa, and Hot Tub Code, Uniform Solar Energy Code, and the Uniform Mechanical Code currently in effect in the state.[34] And it added subsection .490(3)(A) to define a "mechanical administrator" as one

> responsible for ... installing or modifying mechanical piping and systems, devices, fixtures, equipment, or other mechanical materials subject to the Uniform Plumbing Code, Uniform Swimming Pool, Spa, and Hot Tub Code, Uniform Solar Energy Code, and the Uniform Mechanical Code as published by the International Association of Plumbing and Mechanical Officials and the International Conference of Building Officials.[35]

The same legislation amended AS 08.18 to require, as a condition of state registration, that mechanical contractors be licensed as a mechanical administrator or employ someone who is so licensed.[36] Section .171(8)[37] of this chapter defines a "mechanical contractor" as a:

> contractor whose business operations involve install[ing] or modify[ing] mechani-

---

**28.** Mechanical Contractors also claims that adoption by regulation violates the doctrine of separation of powers. There is no separation of powers problem because the departments acted within the scope of their delegated authority. *See supra* Part IV.A.2.

**29.** *See Church v. State, Dep't of Revenue,* 973 P.2d 1125, 1127 (Alaska 1999).

**30.** See *Kodiak Island Borough v. Exxon Corp.,* 991 P.2d 757, 761 (Alaska 1999) (quoting *Rydwell v. Anchorage Sch. Dist.,* 864 P.2d 526, 530–31 (Alaska 1993)).

**31.** *Mack v. State,* 900 P.2d 1202, 1205 (Alaska App.1995) (quoting *Belarde v. Anchorage,* 634 P.2d 567, 568 (Alaska App.1981)).

**32.** *See* ch. 132, § 9, SLA 1988.

**33.** *See id.* (adding section .260).

**34.** *See id.* (adding subsection .270(a)(3)).

**35.** *See id.* (adding subsection .490(3)).

**36.** *See* ch. 132, § 3, SLA 1988 (adding AS 08.18.028(a)).

**37.** *See* ch. 132, § 8, SLA 1988 (amending AS 08.18.171 to define a "mechanical contractor"). Alaska Statute 08.18.171(8) was renumbered as AS 08.18.171(7) in 1988 to maintain alphabetical order throughout the statutes.

cal piping and systems ... subject to the following codes as published by the International Association of Plumbing and Mechanical Officials or the International Conference of Building Officials:

(A) Uniform Plumbing Code;

(B) Uniform Swimming Pool, Spa, and Hot Tub Code;

(C) Uniform Solar Energy Code;

(D) Uniform Mechanical Code.

Collectively, these statutes create professional licensing requirements for mechanical administrators and contractors, and they require DCED to administer an examination to ensure applicants' familiarity with a number of codes, including the Uniform Mechanical Code currently in effect in the state. Mechanical administrators and contractors are defined in reference to four codes that govern their trades. Mechanical Contractors argues that since these statutes specifically refer to the Uniform Mechanical Code rather than "some generic mechanical code," this court should accord the language its plain meaning and require DCED to continue using the Uniform Mechanical Code. Because we will give the language a common sense construction consistent with the objectives of the legislature, we must examine the history of House Bill 472.[38]

Until 1988 mechanical contractors and administrators were not licensed by the state, and anyone able to purchase the required bonds and insurance could become a registered contractor.[39] House Bill 472 sought to solve two problems facing the construction industry at that time. The first purpose was to make it easier for mechanical contractors to obtain construction bonds by defining their trade so that they were not treated as general contractors, whose bonds are much more expensive.[40] The second purpose was to protect the public from substandard workmanship by establishing minimum competency requirements for mechanical contractors.[41] One of the biggest challenges in drafting this legislation was determining how to distinguish a "specialty contractor," which is defined as a contractor whose work requires use of up to three trades, from a "mechanical contractor," which is defined by reference to the codes under which he works.[42] The legislative counsel who assisted in drafting this bill wrote to Representative Mark Boyer, the bill's sponsor, that counsel's lack of knowledge of the industry made it difficult for him to define the term "mechanical administrator" to include all who should be subject to the legislation.[43] Eugene R. Rutland of Mechanical Contractors assisted in drafting this legislation, and he also struggled with how to define a mechanical administrator. In a letter to Representative Boyer, Rutland wrote that:

> The definition of a mechanical administrator is meant to encompass persons who work covered under the referenced codes. It is the best definition I am capable of at the present time without going into detail mentioning Plumbing, Pipefitting, Sprinklers, Ventilation, Air-conditioning, Refrigeration, etc. The thought is that by being detailed someone may be exempt who should have been covered because they were not specifically mentioned.[44]

Ultimately, the legislature opted to define mechanical contractors and administrators as

**38.** Ch. 132, SLA 1988.

**39.** *See* S. Labor and Commerce Comm. Minutes, 15th Leg.2d. Sess. (March 21, 1988) (comments of Randall Burns, Director, Division of Occupational Licensing, Department of Commerce).

**40.** *Id.*

**41.** *See* H. Fin. Comm. Minutes, 15th Leg.2d. Sess. (March 22, 1988) (comments of Eugene R. Rutland, Executive Director, Mechanical Contractors of Fairbanks).

**42.** *See* Letter from Rep. Mark Boyer to All Members of the House of Representatives, in H. Fin. Comm. File for H.B. 472 (April 28, 1988); Posi-

tion Paper, Department of Commerce and Economic Development, in H. Labor and Commerce Comm. File for H.B. 472 (March 22, 1988).

**43.** Letter from George Utermohle, Legislative Counsel to Rep. Mark Boyer, in S. Labor and Commerce Comm. File for S.B. 487 (Dec. 8, 1987). S.B. 487 was the companion bill to H.B. 472.

**44.** Letter from Eugene R. Rutland, Executive Director, Mechanical Contractors of Fairbanks, to Rep. Mark Boyer, in S. Labor and Commerce Comm. File for S.B. 487 (Dec. 28, 1987).

persons who perform work subject to the four separate codes, and it required competency in these codes as a condition of licensing and registration.[45] The Uniform Mechanical Code was used in Alaska at that time so it was included in the definition. While it is clear that the legislature intended these codes to serve as standards for professional competence, there is no indication that the legislature sought to limit the discretion of DCED to establish licensing requirements for mechanical administrators. There is every reason to believe that H.B. 472 would have referred to the IMC had that code been used by DPS in 1988.

The final statutory reference to the Uniform Mechanical Code is found in AS 18.56.300, which governs construction standards for housing eligible for loans from the Alaska Housing Finance Corporation. In 1990 Representative C.E. Swackhammer proposed H.B. 368 to "insure that houses financed by AHFC are properly constructed, thereby protecting consumers from buying a house that has deficiencies which pertain to life safety."[46] This legislation implemented various requirements to obtain a home loan from the AHFC, the most important of which was that new homes must meet the requirements of the state building code.[47] This section defines the state building code for mechanical standards as "the standards set out in the version of the Uniform Mechanical Code adopted by the Department of Public Safety under AS 18.70.080."[48] Mechanical Contractors claims that the specific reference to the Uniform Mechanical Code curtails DPS's discretion to adopt the IMC. The legislative history contradicts this assertion.

Swackhammer's own sectional analysis of H.B. 368 explains that the "[s]tate building code refers to the minimum building and mechanical code adopted by regulation by the Department of Public Safety under AS 18.70.080."[49] There is no indication that the legislature sought to require DPS to adopt a particular code. In fact, this suggestion was specifically addressed, and ultimately rejected, after a trade organization recommended drafting the legislation to require DPS to adopt specific provisions of the Uniform Building Code that the department had not previously adopted.[50] The legislative counsel who helped draft this legislation strongly recommended against such an approach, noting that, unlike the National Electric Code and the Uniform Plumbing Code, both of which were specifically adopted by statute, "the legislature has merely said to the commissioner of public safety [that] it is that official's responsibility to determine minimum fire safety provisions."[51] The legislation ultimately defined the state building code as: "the version of the Uniform Building Code adopted by the Department of Public Safety under 18.70.080"; "the version of the Uniform Mechanical Code adopted by the Department of Public Safety under AS 18.70.080"; "the minimum plumbing code adopted for the state under AS 18.60.705"; and "the minimum electrical standards prescribed by AS 18.60.580."[52] This wording preserves DPS's discretion. The Alaska Housing Finance Corporation's use of the International Codes as a minimum standard for quality is consistent with the legislature's intent.

Mechanical Contractors's primary argument, that the specific statutory references to the Uniform Mechanical Code should control over the general grant of authority given

**45.** AS 08.40.490; AS 08.18.171(7).

**46.** Letter from Rep. C.E. Swackhammer to Rep. Dave Donley, H. Labor and Commerce Comm., Request for a House Bill 368 Hearing, in H. Jud. Comm. File for H.B. 368 (Jan. 12, 1990).

**47.** AS 18.56.300(b).

**48.** AS 18.56.300(e)(3)(B).

**49.** Rep. C.E. Swackhammer, Sectional Analysis for House Bill 368, in H. Jud. Comm. File for H.B. 368 (Jan. 12, 1990).

**50.** Letter from Alaska Northern Chapter of International Conference of Building Officials to Rep. C.E. Swackhammer, Ref. "An Act relating to residential housing assistance provided by the Alaska Housing Finance Corporation," in H. Jud. Comm. File for H.B. 368 (Dec. 6, 1989).

**51.** Letter from Jack Chenoweth, Legislative Counsel, to Rep. C.E. Swackhammer, in H. Jud. Comm. File for H.B. 368 (Jan. 20, 1990).

**52.** AS 18.56.300(e)(3)(A)-(D).

to DPS, has limited application in Alaska and should not be applied where the specific and general provisions may be harmonized.[53] None of the statutory references to the Uniform Mechanical Code specifically relates to the authority of DPS to adopt a particular mechanical code. Nothing in the legislative history supports the assertion that these four statutes should be interpreted to limit DPS's discretion under AS 18.70.080 and require it to re-adopt the Uniform Mechanical Code. To the contrary, these statutes are best understood as creating minimum standards for professional competency and construction quality, both of which can be achieved by the IMC. DPS's adoption of the IMC is consistent with its statutory authority. DCED's adoption of the state's mechanical code is consistent with the legislature's intent to ensure professional competency in the construction industry.

### B. Adoption of the IMC Did Not Violate the Administrative Procedures Act.

 Mechanical Contractors also argues that the IMC was adopted in violation of the Administrative Procedures Act because the decision to adopt the code was arbitrary and because the departments failed to prepare a fiscal note. Regulations are presumed procedurally valid once a certified copy has been filed, and Mechanical Contractors must show a substantial failure to comply with the Administrative Procedures Act to rebut this presumption.[54] We discussed whether adoption of the IMC was reasonable in Part IV.A.2., so here we address only whether the departments failed to provide a fiscal note as required by AS 44.62.195.

### 1. Were DPS and DCED required to prepare a fiscal note?

Alaska Statute 44.62.195 provides:

[i]f the adoption, amendment, or repeal of a regulation will require increased appropriations by the state, the department or agency affected shall prepare an estimate of the appropriation increase for the fiscal year following adoption, amendment, or repeal of the regulation and for at least two succeeding fiscal years.

DPS and DCED both claim that no fiscal note was necessary because adoption of the IMC did not require additional appropriations in the year following adoption or thereafter. The state argues that the only appropriation required to implement the IMC was the legislature's 2001 appropriation of $98,100 for code adoption efforts, which was made *before* adoption of the new model code. Because any code implementation expenses were to be paid from these funds, the state argues that adoption of the new code did not lead to increased appropriations by the state. The record indicates that while DCED expected costs of $16,000 to prepare new testing materials, DPS agreed to pay this cost from the existing $98,100 allocation from the legislature if that became necessary. But the expenditure never became necessary.

DPS and DCED acknowledge that this court will invalidate regulations adopted without a fiscal note if there is convincing evidence that any state department anticipated a need for additional appropriations due to adoption of the regulations.[55] In *Turpin v. North Slope Borough,*[56] we held that a fiscal note is required if any additional appropriation is required, regardless of the source, and we invalidated a regulation adopted without a fiscal note based on evidence that several state agencies anticipated a need for additional funds.[57] Mechanical Contractors argues that implementation of the IMC will require additional appropriations. To support this claim, Mechanical Contractors points to DCED's anticipated need for funding to revise licensing examinations and to an

**53.** *See Chevron U.S.A., Inc. v. LeResche,* 663 P.2d 923, 931 (Alaska 1983) (holding that rule of construction that specific statutory provisions control general ones should not be applied where provisions can be harmonized).

**54.** AS 44.62.100; *Chevron U.S.A.,* 663 P.2d at 929.

**55.** *See Turpin v. North Slope Borough,* 879 P.2d 1009, 1013 (Alaska 1994).

**56.** *Id.*

**57.** *Id.* at 1013–14.

alleged threat by the state to take over the Anchorage building review process. Mechanical Contractors also argues that DPS and DCED are trying to thwart the intent of the fiscal note requirement by "slid[ing] funds around and cobbl[ing] together funding sources from disparate agency sources" to avoid having to seek additional appropriations for code implementation.

The record does not support these claims. DPS agreed to use existing funding sources to pay for testing changes, and there is no evidence that any state agency anticipated any additional expenses in the year of implementation or in subsequent years. There is no evidence that the state threatened to take over the Anchorage building review process.[58]

Neither DPS nor DCED anticipated a need for additional appropriations to adopt the IMC, and no additional funding was necessary in the two years after its adoption in September 2001. No fiscal note was required.

## V. CONCLUSION

The Department of Public Safety and the Department of Community and Economic Development acted within the scope of their delegated authority when they adopted the International Mechanical Code and they substantially complied with the requirements of the Administrative Procedures Act. Accordingly, we AFFIRM the judgment of the superior court.

---

**58.** The state did send a letter to the Municipality of Anchorage to clarify that the International Codes are the minimum standards for code compliance statewide, and it reiterated that under 13 AAC 50.075(a)(2) the state can delegate code compliance authority to municipalities only if local code standards "meet[ ] or exceed[ ]" the state's regulations. We rejected Mechanical Contractors's motion to supplement the record with this letter, as it was not before the superior court when the court decided the case. But even were the letter before us, it provides no support for Mechanical Contractors's claim. This letter is dated November 6, 2002, more than a month after the trial court entered final judgment in favor of the state. The Municipality of Anchorage had already indicated in June 2000 that it intended to adopt the IMC if the state moved to that standard. The state did adopt the IMC in 2001, and the municipality followed suit in January 2003.